[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff James P. Butler, Commissioner of Labor, brings this action against the defendants, pursuant to C.G.S. Section 31-72, CT Page 14512 to collect unpaid compensation allegedly due certain claimants and for other relief allowed by the statute. This court has bifurcated the case to first determine the central issue of whether or not the claimants are employees, within the meaning of Sec. 31-71a, to warrant the plaintiff initiating this suit.
The facts, as found by the court, are as follows: Corporate defendant Suburban Homes and Condos, Ltd. (hereinafter Suburban) is a licensed real estate broker engaged in the real estate business from offices in Wethersfield, Connecticut. Individual defendant Mary Lou Wall is president of the firm and defendant Gary Wall secretary. The named claimants are real estate salespersons working for Suburban. They have filed claims with plaintiff against Suburban for unpaid commissions on real estate transactions as to which they rendered services.
As real estate agents working in Suburban's office, claimants' duties were to acquire listings of properties for sale, negotiate terms of sale, and effectuate closings. When they started with Suburban, they signed an "Independent Contractor Agreement" that denominated them as independent contractors. The Agreement required them to "comply with office policy and procedures," to use Suburban's trade name and trade mark in the performance of their duties, "to work diligently . . . to sell or lease . . . any and all real esate . . . listed with Broker, to solicit additional listings . . . and otherwise to promote the business . . ." The Agreement had annexed a schedule of commissions to which claimants were entitled for their services. It was terminable by agents on reasonable notice and by Suburban immediately on it finding a breach of the Agreement by an agent.
Claimants were not required to punch a time clock, adhere to a fixed schedule, or work a prescribed number of hours, But this court finds they were expected to answer phones and perform other duties at Suburban's offices three hours a week. (called floor time) on a schedule they agreed to among themselves. They were also expected to attend Monday morning staff meetings or to have an excuse for not attending.
Although the agents had the freedom to negotiate the terms of a sales agreement and to effectuate a closing, their phone calls with customers were monitored by defendants May Lou and Gary Wall, and they had to keep Suburban informed of the progress of their transactions All files were kept in Mary Lou's office under lock and key, and claimants were allowed access only by CT Page 14513 permission from Mary Lou. Gary determined all the advertising of properties agents were marketing. Agents were also required to meet with customers in Suburban's offices, although on some occasions agents spoke to customers by phone from their homes.
Since many of the agents were entering the real estate business for the first time, they were trained by Suburban on how to deal with buyers and sellers, how to negotiate deals, how to arrange financing, and the other skills of the business.
Suburban provided its agents with a desk, phone, office supplies, stationary, business cards, and real estate forms. Finally, claimants were required to hold themselves out as agents of Suburban and were not allowed to work for any other real estate broker.
Section 31-72, authorizing the Labor Commissioner to recover unpaid compensation for employees is remedial in nature and "must be liberally construed," Tianti v. William Raveis Real Estate,Inc., 231 Conn. 690, 696 (1995)
Sec. 31-71a(2) defines an "employee as any person suffered or permitted to work by an employer." Sec. 31-71a(3) defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, piece, commission or other basis of calculation."
As stated in Tianti, Id. 696, "From a reading of the plain language of the statutory provisions, it would appear that a real estate salesperson, engaged by a real estate brokerage firm doing business as a corporation and compensated by commission, would be someone who is "suffered or permitted to work by an `employer' and hence an employee. General Statutes Sec. 31-71a(2)."
However, the courts have not relied upon the general language of the statute in making a distinction between an employee and an independent contractor. That distinction is recognized as a "question of fact." Latimer v. Administrator, 216 Conn. 237, 249
(1990). An independent contractor is "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of the employer, except as to the result of his work." Silverberg v.Great Southwest Fire Ins. Co., 214 Conn. 632, 639 (1990). "An employee is one over whom another has the right to control the means and methods of work." Latimer v. Administrator, supra, p. CT Page 14514 247. "The test of the relationship is the right to control, It is not the fact of actual interference with the control, but the right to interfere that makes the difference between an independent contractor and a servant or agent." Id, p. 248.
Clearly, Suburban retained the right to control its sales persons. The claimants worked for Suburban at its offices, were required to comply with its policies and procedures, held themselves out as its representatives, and could be terminated at the discretion of Suburban.
Moreover, Suburban exercised that control over the claimants. Sales persons were required to do floor time at Suburban's office, to attend staff meetings and training sessions, to request permission to see Suburban files, to meet with customers at Suburban's office, to use Suburban stationary, business cards and real estate forms, and were monitored in their dealings with firm customers. In Tianti v. William Raveis Real Estate, Inc., supra, p. 698, the Supreme Court found, on the basis of facts similar to those here that sales persons for a real estate brokerage firm were employees and not independent contractors.
The signed Independent Contractor Agreement between Suburban and the claimants is not determinative of the nature of the relationship between them. In Latimer the court found an employer-employee status despite such an agreement. The court said, "`[w] look beyond the plain language of the contract to the actual status in which the parties are placed," Id. 252
In Tianti the Supreme Court noted that "That the so-called `ABC test' which is used to determine the existence of an employment relationship for the purpose of unemployment compensation: see General Statutes Sec. 31-222(a)(B)(ii): F.A.SInternational, Inc. v. Reilly, 179 Conn. 512, is also applicable here." That test of an employee, in addition to the right in the employer to control the work of the employee, includes the employee doing his work at the place of business of the employer, and not "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ."
Here the claimants performed the bulk of their real estate services at the office of Suburban, and they were not permitted to act as real estate agents for any other broker than Suburban. CT Page 14515
Thus, primarily on the basis of the court finding that Suburban had the right to control claimants in the manner of their work and also exercised that control, plus on the bases of claimants doing their work at Suburban's office and being limited to working in real estate only for Suburban, this court finds that the claimants are employees of Suburban.
As a consequence, the case may proceed for the court to determine the amount of unpaid compensation due each claimant, interest on that sum, and whether or not the plaintiff should also prevail on a claim for double damages and reasonable attorney's fees, as provided for in Sec. 31-72.
Robert Satter State Judge Referee